*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *DIAMOND PHOENIX CORPORATION,*  )<br>  )<br>  *Plaintiff*  )<br>  )<br>*v.*  )<br>  )<br>*STEPHEN SMALL, et al.,*  )<br>  )<br>  *Defendants*  ) | *Docket No. 05-79-P-H* |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

The defendants, Stephen Small and Kingway Acquisition, Inc., move to dismiss Counts One, Two and Four through Seven of the complaint. I recommend that the court grant the motion in part.

**I. Applicable Legal Standard**

The motion to dismiss invokes Fed. R. Civ. P. 12(b)(6), which provides for dismissal for failure to state a claim on which relief may be granted. Defendants' Rule 12(b)(6) Motion to Dismiss Counts One, Two, etc. ("Motion") (Docket No. 10) at 1. "[I]n ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The defendants are entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would not be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

1

## II. Factual Background

The complaint includes the following factual allegations. The plaintiff's business is high performance material handling systems. Complaint for Preliminary and Permanent Injunctive Relief and Damages ("Complaint") (Docket No. 1) ¶ 7. One relatively recent feature of material handling systems designed and sold by the plaintiff is computer-assisted picking. *Id.* ¶ 8. Within this field there has been further development of "pick-to-light" systems. *Id.* ¶ 9. In 1999 the plaintiff sold a pick-to-light system for its carousel storage systems and started to explore the possibility of developing such a system for flow racks. *Id.* ¶¶ 10-11. In the process of building its own pick-to-light technology for flow racks the plaintiff hired defendant Small, who had been employed in the pick-to-light field for many years, to help develop the system and then to market it. *Id.* ¶¶ 15-16, 21. On May 9, 2000 Small signed an Employee Patent and Confidential Information Agreement, which has remained in effect since then. *Id.* ¶¶ 19-20.

The plaintiff encouraged Small to work with Roman Jones, Inc., an engineering firm with a specialty in electronic services, to provide the necessary electronic engineering to create a successful system. *Id.* ¶ 24. In a letter to Small, Roman Jones, Inc. indicated that the plaintiff "will own all of the intellectual property and full design source and documentation used to implement this design." *Id.* ¶ 25. Through the efforts of Small and Roman Jones, Inc. the plaintiff developed a controller area network bus-based rail system for its pick-to-light product for flow rack systems that was the first of its kind in the United States. *Id.* ¶ 27. Small identified and selected component part manufacturers for the system. *Id.* ¶ 28. Small continued to work on design and engineering features of the system after the plaintiff began selling it. *Id.* ¶ 31. The product was very successful for the plaintiff. *Id.* ¶ 32.

On September 12, 2003 Small gave the plaintiff two weeks' notice of his resignation; his employment ended that month. *Id*. ¶ 33. Small left the plaintiff to work for defendant Kingway, the plaintiff's direct competitor, as president of its division manufacturing pick-to-light products. *Id*. ¶ 34. On November 21, 2003, after learning that Chris Mullin, an employee of Kingway, with the encouragement of Small, had been contacting customers of the plaintiff who had purchased the products developed and sold by Small when he was employed by the plaintiff as well as potential customers identified by Small while he was employed by the plaintiff, the plaintiff's chief executive officer sent Small a letter by certified mail. *Id*. ¶ 35. The letter stated that the plaintiff "expect[ed] Small to] live by the [confidentiality] agreement" and asked Small to "acknowledge that you have ceased contacting clients learned about at Diamond Phoenix." *Id*.

Around February 2004 Small approached the plaintiff's chief executive officer about the possibility of Kingway purchasing the rights and inventory of the plaintiff relating to its pick-to-light systems. *Id*. ¶ 36. The officer indicated interest and mentioned a possible price. *Id*. Kingway showed no further interest in such an acquisition. *Id*. ¶ 37.

In the fall of 2004 the plaintiff began to hear through its sales force that Kingway had developed a rail pick-to-light system. *Id*. ¶ 38. In January 2005 Small contacted the plaintiff about the possibility of Kingway selling to the plaintiff hardware components for the plaintiff's rail pick-to-light system. *Id*. ¶ 39. At a meeting at the plaintiff's offices on April 6, 2005 in furtherance of this possibility Small showed employees of the plaintiff a second generation of the plaintiff's rail pick-to-light system that used the initial technology developed by Small and Roman Jones, Inc. while Small was employed by the plaintiff and many of the upgrades, improvements and refinements that were under consideration by Small and the plaintiff while Small was employed by the plaintiff. *Id*. ¶ 40. This Kingway system was similar to the plaintiff's system in several respects. *Id*. ¶¶ 41-45. During

the meeting, Small stated that he had started his work for Kingway by engaging the services of Roman Jones, Inc. to help him with the engineering on Kingway's new pick-to-light system; that Kingway contacted the manufacturers used by the plaintiff for component parts; that he had sold a Kingway pick-to-light system to a customer to which he had earlier sold the plaintiff's system and that he had contacted a customer to whom he had tried to sell the plaintiff's system; and that his goal for the meeting was to persuade the plaintiff to stop manufacturing its pick-to-light system and become instead a seller of Kingway's pick-to-light system. *Id.* ¶¶ 47-50.

The plaintiff's pick-to-light products are essential to its future business plans. *Id.* ¶ 51.

### III. Discussion

### A. Count One

Count One of the complaint asserts a claim under the Uniform Trade Secrets Act. Complaint ¶¶ 56-60. In Maine, the Act is codified at 10 M.R.S.A. §§ 1541-48. The defendants contend that the plaintiff "has not pleaded sufficient facts . . . to establish [that] the alleged information is a trade secret." Motion at 5. The statutory definition follows:

> **Trade secret**. "Trade secret" means information, including, but not limited to, a formula, pattern, compilation, program, device, method, technique or process, that:
> **A.** Derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
> **B.** Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

10 M.R.S.A. § 1542(4). Both injunctive and monetary relief are available for misappropriation of a trade secret. 10 M.R.S.A. §§ 1543, 1544.

The defendants cite the list of factors to be considered in determining whether certain information has independent economic value. Motion at 4; *see Spottiswoode v. Levine*, 730 A.2d 166,

174 n.6 (Me. 1999).  However, their argument specifically addresses only the second subsection of the statute, having to do with secrecy.  Motion at 4-5.  They contend that the complaint must specify "the extent of the measures Plaintiff took to guard the secrecy of the information" or "the information available in the public domain or what information was available at the trade shows."  *Id*. at 5.  They add that a "glaring example" of the plaintiff's "failure to maintain secrecy" is "the public filing of the technical information and customer names that Plaintiff alleges to be secret and confidential."  *Id.* at 5.  This "public filing" is apparently the filing of the complaint and the exhibits attached to it without any attempt to file under seal or otherwise maintain confidentiality.  *Id*.

The plaintiff responds that its complaint and attachments "do not disclose the entire universe of the details concerning the final design of the rail pick-to-light system . . . , nor do they disclose the entire client list, supplier list, or pricing information" at issue.  Plaintiff's Opposition to Defendants' Rule 12(b)(6) Motion, etc. ("Opposition") (Docket No. 13) at 12.  It also points out that information which was not a trade secret when the complaint was filed may well have been a trade secret earlier, when Small left the plaintiff's employ.  *Id*.  These observations are accurate.  The mere filing of the complaint and its exhibits cannot establish as a matter of law that no trade secret existed.  Indeed, courts construing similar or identical statutory definitions have observed that:

> The existence of a trade secret ordinarily is a question of fact.  As aptly observed by our colleagues on the Fifth Circuit, a trade secret "is one of the most elusive and difficult concepts in the law to define."  *Lear Siegler, Inc., v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir. 1978).  In many cases, the existence of a trade secret is not obvious; it requires an ad hoc evaluation of all the surrounding circumstances.  For this reason, the question of whether certain information constitutes a trade secret is best "resolved by a fact finder after full presentation of evidence from each side." *Id*. at 289.

*Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003); *see General Universal Sys., Inc. v. Lee*, 379 F.2d 131, 149-50 (5th Cir. 2004).

Under the applicable pleading standard, the complaint does state a claim under the Uniform Trade Secrets Act when the plaintiff is given the benefit of reasonable inferences to be drawn from the alleged facts. Complaint ¶¶ 15, 19, 27-29, 35, 57-60. Count I should not be dismissed.[1]

### B. Count Two

Count Two of the complaint, entitled "General Equitable Relief," asserts that the plaintiff has suffered and will suffer irreparable harm as a result of Small's alleged breach of the confidential information agreement for the benefit of Kingway. Complaint ¶¶ 61-63. The defendants contend, correctly, that a general claim for equitable relief may not stand alone and "is merely an appendage of some other cause of action." Motion at 6. The plaintiff responds with a lengthy discussion of the availability of injunctive relief. Opposition at 12-14. This response misses the point. The plaintiff specifically asks for such relief only in connection with Count One. Complaint at 14. This does not and cannot mean that it may not seek injunctive relief in connection with the other substantive counts in the complaint. Injunctive relief is just that, relief; it is not a separate cause of action. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("There is no such thing as a suit for a traditional injunction in the abstract."); *see also Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir. 1978). Count II should be dismissed.

### C. Count Four

Count Four of the complaint alleges that Small breached a common-law duty of loyalty which he owed to the plaintiff. Complaint ¶¶ 67-70. The defendants argue that any such duty exists only while an individual is actually employed by the entity alleging the breach. Motion at 6. Since the

---

[1] The parties expend considerable time and effort arguing about whether a verified complaint is necessary to support a request for injunctive relief. Motion at 2; Opposition at 8-10; Defendants' Reply to Plaintiff Diamond Phoenix Corporation's Opposition, etc. ("Reply") (Docket No. 19) at 2. The only question before the court at this time is whether the complaint states a claim upon which relief may be granted; whether a particular form of relief, which is requested along with other forms, may ultimately be available is not currently a matter for resolution by the court.

alleged breach by Small took place after he left the plaintiff's employ, they contend, the plaintiff has failed to state a claim on which relief may be granted. *Id*. at 6-7. The plaintiff responds that "[w]hen an employee leaves employment, he is still bound, to some extent, by his fiduciary duties to his former employer." Opposition at 14. In support of this position, the plaintiff cites only an opinion of the Arizona Court of Appeals. *Id*. at 15.

In 1963, the First Circuit stated:

> At common law the employee owes a duty of loyalty to his employer. He must not, while employed, act contrary to the employer's interests and, in general terms, owes a duty of loyalty as one of the incidents of the employer-employee relationship. . . . It is clear to us . . . that the individual defendants on their own testimony convicted themselves of violating their duty of loyalty to their employer before they resigned. Their duties after resignation are another matter . . . .

*Universal Elec. Corp. v. Golden Shield Corp.*, 316 F.2d 568, 573 (1st Cir. 1963) (citation and internal quotation marks omitted). In *McCallister Co. v. Kastella*, 825 P.2d 980 (Ariz. App. 1992), the opinion of an intermediate appellate court on which the plaintiff relies, the court, construing Arizona law, addressed only the individual defendant's actions before her employment by the plaintiff was terminated. *Id*. at 982-83, 984. It provides no help to the plaintiff here.

The section of the Restatement of Agency cited by the plaintiff, Opposition at 15, which has not been adopted by the Maine Law Court, provides that, "after the termination of the agency," an agent has a duty to the principal "not to use or to disclose to third persons . . . in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters . . . ." Restatement (Second) of Agency § 396(b) (2005). While not necessarily a "duty of loyalty," as the plaintiff characterizes it, Opposition at 14, Complaint ¶ 68, this duty is one of which the complaint may reasonably be construed to allege a breach. The defendants do not address this argument in their reply. The Law Court has expressly adopted other sections of the Restatement of Agency, *see, e.g.,*

*State v. Cornhuskers Motor Lines, Inc.*, 854 A.2d 189, 192 (Me. 2004) (section 228); *Peoples Heritage Sav. Bank v. Pease*, 797 A.2d 1270, 1276 (Me. 2002) (section 27); *Szelenyi v. Morse, Payson & Noyes Ins.*, 594 A.2d 1092, 1094 (Me. 1991) (section 376), and it is reasonable to expect that it would adopted section 396 were an appropriate case presented to it. Accordingly, the defendants are not entitled to dismissal of Count Four.

### D. Count Five

Count Five alleges that Small breached a fiduciary duty to the plaintiff. Complaint ¶¶ 71-74. The complaint alleges that this duty arose out of a confidential relationship between the two. *Id.* ¶ 72. Small contends that the complaint fails to allege the elements of a claim for breach of a fiduciary duty under Maine law. Motion at 7. The plaintiff's response addresses both Count Four and Count Five. Opposition at 14-15. In essence, the plaintiff characterizes the "duty of loyalty" to which Count Four refers as being the same as the "duty of confidential relationship" to which Count Five refers. *Id.* If that is the case, the two counts are duplicative[2] and one should be dismissed.

In addition, under Maine law a claim based on a fiduciary relationship includes the following elements:

> (1) the actual placing of trust or confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue.

*Stewart v. Machias Sav. Bank*, 762 A.2d 44, 46 (Me. 2000) (citation and internal quotation marks omitted). "A fiduciary duty will be found to exist, as a matter of law, only in circumstances where the law will recognize both the disparate positions of the parties and a reasonable basis for the placement of trust and confidence in the superior party in the context of specific events at issue." *Bryan R. v.*

---

[2] One of the cases cited by the plaintiff in this section of its memorandum of law, *Desfosses v. Notis*, 333 A.2d 83 (Me. 1975); Opposition at 14, defines an agent's fiduciary duties to his principal "broadly" to include "duties of loyalty." This is consistent with the plaintiff's apparent view that Counts Four and Five allege the same cause of action.

8

*Watchtower Bible & Tract Soc'y*, 738 A.2d 839, 846 (Me. 1999).  Here, Small's former employer alleges that Small had a fiduciary duty toward it.  Complaint ¶ 72.  However, beyond the conclusory allegation that such a relationship existed, the complaint offers nothing about the foundations of the alleged duty.

> In order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship.

*Bryan R.,* 738 A.2d at 846-47.  The complaint in this case sets forth no such facts. However indulgently the complaint may be read, it cannot be read to allow the drawing of a reasonable inference that the relationship between the plaintiff and Small was such that Small owed his employer a fiduciary duty under Maine law, or indeed that Small was ever the "superior party" in his relationship with the plaintiff.  *See also United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 240 (1st Cir. 2004) ("Simply parroting the language of a . . . cause of action, without providing some factual support, is not sufficient to state a claim.").

Count Five should be dismissed.

### E.  Count Six

Count Six alleges that Kingway tortiously interfered with the "advantageous relationship" that the plaintiff had with Small by virtue of the confidential information agreement.  Complaint ¶¶ 75-80. Kingway contends that the complaint fails to allege "any conduct that might constitute unlawful coercion or extortion" by Kingway.  Motion at 8.  The plaintiff responds that its allegation that Kingway "imposed performance and other expectations on Defendant Small that in these circumstances intimidated Defendant Small into breaching the Employee Patent and Confidential Agreement," Complaint ¶ 78, alleges the "type of economic pressure" that "could give rise to 'intimidation' as the Law Court has defined it in this context."  Opposition at 15.

9

Under Maine law,

> [t]o succeed on a tortious interference claim, [a plaintiff] need[s] to establish (1) the existence of a valid contract or prospective economic advantage; (2) interference with that contract or advantage through fraud or intimidation; and (3) damages proximately caused by the interference.

*Gordan v. Cummings*, 756 A.2d 942, 946 (Me. 2000) (citation and internal quotation marks omitted). The plaintiff relies on intimidation as the means of interference in this case. "Interference by intimidation involves unlawful coercion or extortion." *Rutland v. Mullen*, 798 A.2d 1104, 1111 (Me. 2002).

The plaintiff asserts that "[o]ne can imagine a situation where economic pressure applied by one's employer could rise to the level of 'extortion' so as to give rise to liability pursuant to this tort." Opposition at 15-16. It makes no argument that it has sufficiently alleged unlawful coercion. Under Maine law, an allegation that the property intended to be injured by extortion is a contract of employment is sufficient to allege a crime. *State v. Vallee*, 136 Me. 432, 443 (1940), *overruled on other grounds by State v. Deschambault*, 159 Me. 223, 227-28 (1963). Accordingly, extortion under Maine law may involve threatened loss of a contract of employment. Paragraph 78 of the complaint may reasonably be read to allege the threatened loss of Small's employment by Kingway and thus Count Six appears to be sufficient under Maine law.

The motion to dismiss Count Six should be denied.

### F. Count Seven

Count Seven of the complaint alleges conversion. Complaint ¶¶ 81-84. The complaint identifies the property allegedly converted as "[t]he information protected by the Employee Patent and Confidential Information Agreement." *Id.* ¶ 82. The defendants contend that the claim alleged does

10

not involve the limited types of intangible property that may be subject to conversion under Maine law. Motion at 9. In response, the plaintiff concedes that "no conversion claim lies under Maine law for conversion of intangible property in the nature of a trade secret and stipulates to the dismissal of its conversion claim to the extent it relies on the appropriation of such information." Opposition at 16.[3] The plaintiff nonetheless maintains that it has stated a viable claim for conversion "to the extent that defendant Small actually converted tangible property in the form of documents or lists." *Id*. The defendants respond that the plaintiff "has neglected to allege any facts in the Complaint that state or fairly imply that Small actually has any tangible property." Reply at 7.

In support of its assertion that it has stated a claim for conversion of tangible property, the plaintiff cites "Complaint, Counts I and II [sic], Prayer for Relief (asking for return of tangible property)." Opposition at 16. The only references to documents in those counts appear in the prayers for relief; there are no factual allegations alleging that either of the defendants possesses documents belonging to the plaintiff. The defendants contend that prayers for relief may not be considered as alleging facts. But they cite no authority that supports their position. Reply at 7. In *WICO Corp. v. Willis Indus.*, 567 F.Supp. 352, 355 (N.D. Ill. 1983), the court noted that "familiar pleading principles teach [that] the prayer for relief is not part of the cause of action itself, which is a function of the *facts* alleged in the complaint." (Emphasis in original.) Citing *WICO*, the Fifth Circuit held in *Bank of New Orleans & Trust Co. v. Monco Agency, Inc.*, 823 F.2d 888 (5th Cir. 1987), that failure to mention a particular theory of recovery in any part of a complaint other than the prayer for relief did not bar the

---

[3] "Conversion may extend to certain types of intangibles, for example a right to payment, or a right to withdraw funds, that are customarily merged in or identified with some document, such as a promissory note or bank book. The unfair use and appropriation of information that is not customarily merged in a particular document is more appropriately addressed by other remedies." *Northeast Coating Techs., Inc. v. Vacuum Metallurgical Co.*, 684 A.2d 1322, 1324 (Me. 1996) (citation and internal quotation marks omitted).

11

plaintiff from asserting that theory in further proceedings, in part because the substance of a complaint prevails over "technicalities and pleading niceties" under the concept of notice pleading. *Id*. at 891.

It is not necessary that this court determine whether either of these opinions is close enough on its facts to be persuasive authority for purposes of this case, however, because the plaintiff may, at this relatively early stage of the proceedings, remove any pleading deficiency by amending Count Seven to include the appropriate factual allegations. Leave to so amend is hereby given.[4] If the plaintiff files an amended complaint with additional factual allegations in Count Seven no later than five business days from the date of this recommended decision, I recommend that the motion to dismiss Count Seven be granted as to any intangible property and otherwise denied. If no such amendment is filed, I recommend that the motion to dismiss Count Seven be granted in its entirety.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion to dismiss be **GRANTED** as to Counts Two, Five and that portion of Count Seven that alleges conversion of information not customarily merged in a particular document and otherwise **DENIED**. My recommendation as to Count Seven is conditioned on the filing by the plaintiff no later than five business days from the date of this recommended decision of an amended complaint amending Count Seven to allege the conversion of a document or documents that contains or contain the information at issue. In the absence of such a filing, I recommend that the motion to dismiss be granted as to Count Seven in its entirety.

## *NOTICE*

---

[4] This leave to amend extends only to Count Seven.

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge